## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**ANTHONY O. COSBY,**
**Claimant Below, Petitioner**

**vs.)   No. 20-0719**   (BOR Appeal No. 2055163)
                        (Claim No. 2014003420)

**ALPHA NATURAL RESOURCES, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Anthony O. Cosby, by counsel Patrick K. Maroney, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Alpha Natural Resources, Inc., by counsel H. Dill Battle III, filed a timely response.

The issue on appeal is the amount of permanent partial disability in the claim. The claims administrator granted no permanent partial disability award in an Order dated February 2, 2017. On February 11, 2020, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's decision. This appeal arises from the Board of Review's Order dated August 20, 2020, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of
> appeals shall consider the record provided by the board and give deference
> to the board's findings, reasoning and conclusions.

1

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Cosby injured his right shoulder in the course of his employment on May 16, 2013, when he fell off of a beltline and tried to catch himself with his right arm. As a result, he pulled and strained his right shoulder. By Order of the claims administrator dated September 10, 2013, a modified compensability ruling was issued holding the claim compensable on a no lost time basis for the condition of right shoulder sprain/strain. The claims administrator declined to add the diagnoses of complete rupture of rotator cuff, osteoarthritis, and lumbar sprain/strain to the claim.

The medical record indicates that Mr. Cosby had advanced right shoulder degenerative disease prior to the compensable incident on May 16, 2013. He injured his right shoulder on July 25, 2011, and x-rays revealed moderate glenohumeral and acromioclavicular joint arthropathy with marginal spurring of the inferior distal clavicle, acromion, and inferior medial humeral head. A right shoulder MRI on September 30, 2011, showed increased signal in the supraspinatus, representing tendinopathy or a partial thickness tear. There were degenerative changes at the acromioclavicular joint and glenohumeral joint with some cartilaginous thinning and subchondral marrow signal change, as well as fluid in the subacromial bursa and deep to the supraspinatus muscle. He underwent extensive treatment, physical therapy, and injections with Bone and Joint Surgeons. Clark D. Adkins, M.D., diagnosed Mr. Cosby with shoulder osteoarthritis and rotator cuff rupture on December 13, 2012.

Peter J. Lukowski, M.D., performed right shoulder surgery on July 24, 2013, two months after the compensable incident. The surgery performed was a long head biceps tenotomy and debridement of a superior labral tear. The superior labral tear that was debrided was described as "chronic looking." Dr. Lukowski also considered performing a biceps tenodesis, but the procedure was ruled out based upon Mr. Cosby's age and the degree of arthritic changes seen in the shoulder. On February 18, 2014, Dr. Lukowski noted that some of the severe glenohumeral degenerative changes he saw when he operated were seen radiographically in May 2013, prior to the compensable incident. Mr. Cosby had recovered from right shoulder surgery, and he was doing well until he returned to work in the late fall. New x-rays showed further narrowing of the

glenohumeral joint, especially inferiorly. Dr. Lukowski concluded that most of Mr. Cosby's pain is coming from degenerative joint disease of his glenohumeral joint.

Mr. Cosby followed-up with Dr. Lukowski on July 8, 2014, for his right shoulder pain. Dr. Lukowski noted severe degenerative joint disease of the right shoulder. Although he had received periodic palliative injections in the past, his last injection was in February 2014. It was noted that Mr. Cosby continues to work in a heavy manual labor job which exacerbates his shoulder problems. The assessment was osteoarthritis of the shoulder, and the plan of treatment was 80 mg Depo-Medrol given into the glenohumeral joint with future treatment as needed. The joint was injected, and Mr. Cosby was advised to seek employment positions outside of the manual labor work category.

On December 5, 2016, Mr. Cosby was seen by Dr. Adkins for right shoulder pain. It was noted that activity bothers his lateral shoulder and anterior shoulder. He stated that he was able to perform at the heavy work level, which he tolerated with difficulty. Dr. Adkins considered the symptoms to be due more to glenohumeral arthritis. Nonsurgical options were discussed, and Mr. Cosby was released to return to work on November 22, 2016.

Mr. Cosby was evaluated by Prasadarao B. Mukkamala, M.D., on January 12, 2017, where he complained of right shoulder soreness and weakness, but stated that he was able to carry on his daily life activities without restrictions. In a report dated January 13, 2017, Dr. Mukkamala diagnosed Mr. Cosby with a right shoulder sprain. He opined that his current complaints are causally related to preexisting, non-work related arthrosis. Dr. Mukkamala noted that he had a prior injury to the right shoulder and that the MRI of the right shoulder performed on June 18, 2013, revealed significant degenerative changes and evidence of acromioclavicular joint degenerative disease. There was evidence of degenerative subchondral cysts with suspected adjacent tearing of the glenoid labrum along the inferior aspect of the glenoid labrum and degenerative chondrosis of the humeral head. There was partial thickness tearing of the supraspinatus and tendinopathy/partial thickness tear of the infraspinatus tendon. Dr. Mukkamala stated all those findings were degenerative in nature and preexisting. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), Dr. Mukkamala found 1% whole person impairment for upper extremity impairment. However, Dr. Mukkamala apportioned the impairment and allocated 1% to preexisting conditions. He concluded that Mr. Cosby does not have any permanent impairment resulting from the compensable injury in this claim.

By Order of the claims administrator dated February 2, 2017, Mr. Cosby was granted no permanent partial disability award based on the Independent Medical Evaluation of Dr. Mukkamala. The claim was closed for permanent partial disability benefits. Mr. Cosby protested the claims administrator's decision.

In an Independent Medical Evaluation report dated January 16, 2019, Bruce A. Guberman, M.D., concluded that Mr. Cosby has right shoulder symptoms with intermittent treatment prior to his compensable injury, after which the symptoms became more severe and he could no longer perform the heavy work of his job. It was noted that Mr. Cosby continued to

have pain tenderness, range of motion abnormalities, and weakness following surgery. Dr. Guberman found upper extremity impairment of 3% for 140° of flexion, 2% for 130° of extension, and 2% for 60° of internal rotation, which equated to 7% upper extremity impairment or 4% whole person impairment. Dr. Guberman acknowledged the preexisting degenerative changes and listed the range of motion abnormalities in the left shoulder as being 1% whole person impairment. Dr. Guberman opined that the only objective method to quantify preexisting impairment for the right shoulder is to assume that Mr. Cosby would have had the same 1% whole person impairment found in the left shoulder. He noted that this was the same amount apportioned by Dr. Mukkamala. Therefore, Dr. Guberman allocated 1% whole person impairment to the preexisting conditions and 3% whole person impairment to the compensable injury of May 16, 2013.

An Independent Medical Evaluation report of Marsha Bailey, M.D., dated September 23, 2019, found that Mr. Cosby's most significant complaint was loss of strength in his dominant right upper extremity and constant right shoulder pain. Dr. Bailey stated that his current complaints are solely the result of his severe, preexisting, and unrelated right shoulder osteoarthritis and degenerative joint disease. Dr. Bailey found upper extremity impairment of 8% for the right shoulder that coverts to 5% whole person impairment. She then apportioned the entire 5% whole person impairment as preexisting and unrelated right shoulder osteoarthritis and degenerative joint disease. Dr. Bailey supported her allocation determination by noting that Dr. Lukowski himself characterized the changes as severe degenerative findings. She disputed Dr. Guberman's rationale in regard to apportionment and noted that he used the impairment in the uninjured left shoulder as a basis for apportioning an equivalent impairment out of the compensable right shoulder injury. Dr. Bailey stated that the flaw in Dr. Guberman's methodology is that he failed to account for the preexisting right shoulder injury of July 25, 2011. She explained that Dr. Guberman's apportionment method would be appropriate if Mr. Cosby had a normal right shoulder at the time of his compensable injury; however, this was not the case.

In a decision dated February 11, 2020, the Office of Judges affirmed the February 2, 2017, Order of the claims administrator which granted Mr. Cosby no permanent partial disability award. The Office of Judges found Dr. Bailey's report to be the most persuasive medical evidence regarding both whole person impairment and apportionment. She found that Mr. Cosby has no whole person impairment due to the injury in this claim. On August 20, 2020, the Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its decision to affirm the claims administrator's grant of no additional permanent partial disability award.

After review, we agree with the decision of the Office of Judges, as affirmed by the Board of Review. The Office of Judges determined that Dr. Bailey used the correct methodology when she apportioned Mr. Cosby's preexisting impairment. Dr. Guberman's opinion was properly determined to be less credible because his apportionment methodology failed to fully account for the contribution of all factors to Mr. Cosby's impairment. The medical evidence of record indicates that Mr. Cosby failed to establish that he is entitled to any greater permanent partial disability award in this claim.

4

Affirmed.

**ISSUED: November 5, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton